IN THE SUPREME COURT OF THE STATE OF KANSAS

No. 119,012

In the Matter of JEFFERY A. MASON,
*Respondent*.

ORIGINAL PROCEEDING IN DISCIPLINE

Original proceeding in discipline. Opinion filed September 28, 2018. Indefinite Suspension.

*Stanton A. Hazlett*, Disciplinary Administrator, argued the cause, and was on the formal complaint for the petitioner.

*John J. Ambrosio*, of Ambrosio & Ambrosio, Chtd., of Topeka, argued the cause, and *Jeffery A. Mason,* respondent, argued the cause pro se.

PER CURIAM:  This is an attorney discipline proceeding against Jeffery A. Mason, of Goodland, Kansas. Respondent was admitted to the practice of law in the state of Kansas on September 23, 1983.

On December 23, 2016, the Kansas Supreme Court suspended respondent's license to practice law for a period of six months for violating Kansas Rules of Professional Conduct (KRPC) 1.1 (2015 Kan. Ct. R. Annot. 442) (competence), 1.3 (2015 Kan. Ct. R. Annot. 461) (diligence), 1.4 (2015 Kan. Ct. R. Annot. 482) (communication), 8.4(c) (2015 Kan. Ct. R. Annot. 672) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and 8.4(d) (engaging in conduct prejudicial to the administration of justice). *In re Mason*, 305 Kan. 662, 385 P.3d 523 (2016). The respondent's license remains suspended.

1

On December 19, 2017, the Disciplinary Administrator's office filed a new formal complaint against respondent alleging violations of the Kansas Rules of Professional Conduct. Respondent filed an answer to the formal complaint.

A panel of the Kansas Board for Discipline of Attorneys held a hearing on February 13, 2018. Respondent appeared in person and with counsel, John J. Ambrosio. The hearing panel determined respondent violated KRPC 1.3 (2018 Kan. S. Ct. R. 292) (diligence); KRPC 1.4(a) (2018 Kan. S. Ct. R. 293) (client communication); and KRPC 8.4(c) (2018 Kan. S. Ct. R. 381) (conduct involving dishonesty, fraud, deceit, or misrepresentation).

Upon conclusion of the hearing, the panel made findings of fact, conclusions of law, and a disciplinary recommendation. Respondent took no exceptions to the hearing panel's report but reserved the right to argue about the appropriate discipline.

Before this court, the Disciplinary Administrator's office endorses the panel's findings and recommends the respondent's license to practice law be indefinitely suspended with an effective date made retroactive to December 23, 2016, the date of the six-month suspension previously entered by this court. Respondent recommends he be censured, that the censure be published in the Kansas Reports, and that he be placed on probation under the terms and conditions in his proposed probation plan. We quote the report's pertinent parts below.

"*Findings of Fact*

. . . .

"7.     In March, 1988, the board of directors of Northwest Kansas Area Medical Foundation (hereinafter "the Foundation") retained the respondent to prepare an

2

annual report for the corporation and to annually prepare and file IRS Form 990EZ. The Foundation is a nonprofit organization, formed under Internal Revenue Code 501(c)(3). IRS Form 990EZ is required to be filed annually with the IRS by nonprofit organizations to be exempt from income tax. Later that year, the respondent became a member of the Foundation's board of directors.

"8.     In 2001, the respondent failed to timely file the IRS Form 990EZ and a penalty was imposed by the IRS.

"9.     In 2003, the respondent became the president of the Foundation.

"10.     The respondent timely filed IRS Forms 990EZ for tax years 2004 through 2009. Additionally, the respondent timely prepared the annual reports during those same years for the Foundation. Finally, the respondent satisfactorily performed other legal services to the Foundation during this time.

"11.     However, the respondent failed to file IRS Form 990EZ for the Foundation for tax years 2010 through 2015. Despite the respondent's failure to file IRS Form 990EZ for the Foundation for tax years 2010 through 2015, the respondent did timely prepare the annual reports for the Foundation for those same years.

"12.     In 2013, the Foundation changed its name to the Goodland Medical Foundation. The respondent drafted the documents for the name change, including the amendments to the Articles of Incorporation. The respondent properly filed the amendments to the Articles of Incorporation with the Kansas Secretary of State.

"13.     When questioned by board members regarding the status of the IRS Forms 990EZ, the respondent falsely reported that the forms were taken care of or that he was working on them.

"14.     On July 5, 2016, the Foundation learned that its Internal Revenue Code 501(c)(3) status had been revoked as a result of the respondent's failure to file IRS Forms 990EZ beginning in 2011. Even after the Foundation's board learned that its Internal

3

Revenue Code 501(c)(3) status had been revoked, the respondent continued to falsely report that he was working on taking care of the situation when he was taking no action.

"15.     On January 5, 2017, the respondent advised the board of the Foundation that he was not seeking re-election as president of the board. By that time, the respondent's license to practice law had been suspended by the Kansas Supreme Court for other misconduct.

"16.     On January 12, 2017, the respondent met with R.S., a board member regarding the IRS Forms 990EZ. R.S. requested a copy of the forms. The respondent told her that he would get them to her and he would call the IRS to check on the status. The respondent, however, did not tell R.S. that he had not filed them. The respondent took no action to resolve the situation.

"17.     On January 30, 2017, the respondent submitted his resignation as president and [as] a board member of the Foundation. On February 23, 2017, the respondent turned over his files to the Foundation's secretary. Despite the respondent's familiarity with the disciplinary process, the respondent failed to self-report his misconduct.

"18.     The Foundation retained Kenneth Wasserman to seek reinstatement of the Foundation's Internal Revenue Code 501(c)(3) status. On March 6, 2017, Kenneth Wasserman filed a complaint with the disciplinary administrator's office. The respondent's actions resulted in a financial loss to the Foundation in the amount of at least $45,500. Additionally, the Foundation incurred attorney fees in the amount of $2,244.76, accounting fees in the amount of $3,500, and a reinstatement fee of $850. Finally, persons who made charitable donations to the Foundation while the Foundation's Internal Revenue Code 501(c)(3) status was lost have been notified that their donations may not be tax deductible.

4

"19.     Based upon the respondent's answer to the formal complaint and the above findings of fact, the hearing panel concludes as a matter of law that the respondent violated [KRPC] 1.3, [KRPC] 1.4, and [KRPC] 8.4, as detailed below.

## "[KRPC] 1.3

"20.     Attorneys must act with reasonable diligence and promptness in representing their clients. See [KRPC] 1.3. The respondent admitted that he failed to diligently and promptly represent the Foundation by failing to file the IRS Form 990EZ for tax years 2010 through 2015. The respondent's lack of diligence caused the Foundation to [lose] at least $45,500. Because the respondent failed to act with reasonable diligence and promptness in representing his client, the hearing panel concludes that the respondent violated [KRPC] 1.3.

## "[KRPC] 1.4

"21.     [KRPC] 1.4(a) provides that '[a] lawyer shall keep a client reasonably informed about the status of a matter and promptly comply with reasonable requests for information.' *Id.* In this case, the respondent admitted that he violated [KRPC] 1.4(a) when he misled the Foundation's board of directors regarding the status of the IRS Form 990EZ for tax years 2010 through 2015. Accordingly, the hearing panel concludes that the respondent violated [KRPC] 1.4(a).

## "[KRPC] 8.4(c)

"22.     'It is professional misconduct for a lawyer to . . . engage in conduct involving dishonesty, fraud, deceit or misrepresentation.' [KRPC] 8.4(c). The respondent engaged in conduct that involved dishonesty when he misled members of the Foundation's board that he was working on or had taken care of the IRS Form 990EZ for tax years 2010 through 2015. As such, the hearing panel concludes that the respondent violated [KRPC] 8.4(c).

"23.     In making this recommendation for discipline, the hearing panel considered the factors outlined by the American Bar Association in its Standards for Imposing Lawyer Sanctions (hereinafter 'Standards'). Pursuant to Standard 3, the factors to be considered are the duty violated, the lawyer's mental state, the potential or actual injury caused by the lawyer's misconduct, and the existence of aggravating or mitigating factors.

"24.     *Duty Violated*. The respondent violated his duty to his client to provide diligent representation and adequate communication. Additionally, the respondent violated his duty to the public to maintain his personal integrity.

"25.     *Mental State*. The respondent knowingly violated his duties.

"26.     *Injury*. As a result of the respondent's misconduct, the respondent caused the Foundation a financial loss of at least $45,500. Additionally, the respondent's misconduct created a potential injury to persons who made donations to the Foundation.

"27.     *Aggravating and Mitigating Factors.* Aggravating circumstances are any considerations or factors that may justify an increase in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following aggravating factors present:

     a.     Prior Disciplinary Offenses. On December 23, 2016, the Kansas Supreme Court suspended the respondent's license to practice law for violation [of] [KRPC] 1.1 (competence), [KRPC] 1.3 (diligence), [KRPC] 1.4 (communication), [KRPC] 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation), and [KRPC] 8.4(d) (engaging in conduct prejudicial to the administration of justice).

Recently, the disciplinary administrator informally admonished the respondent for violating [KRPC] 1.1 (competence) in a water rights case.

b.      Dishonest or Selfish Motive. The respondent repeatedly provided false information to members of the Foundation's board. Thus, the hearing panel concludes that the respondent's misconduct was motivated by dishonesty. The respondent's misconduct, however, was not selfish. The respondent did not gain from the misconduct.

c.      A Pattern of Misconduct. For a period of years, the respondent failed to file IRS Form 990EZ on behalf of the Foundation. Additionally, for a period of years, the respondent falsely told members of the Foundation's board that the IRS Form 990EZ were taken care of. Additionally, the misconduct in this case is remarkably similar to the misconduct in the previous disciplinary case in that in both cases the respondent engaged in dishonest conduct to conceal facts which he did not want others to discover. The hearing panel concludes that the respondent's actions establish a pattern of misconduct.

d.      Multiple Offenses. The respondent committed multiple rule violations. The respondent violated [KRPC] Rules 1.3 (diligence), 1.4 (communication), and 8.4(c) (engaging in conduct involving dishonesty, fraud, deceit, or misrepresentation). Accordingly, the hearing panel concludes that the respondent committed multiple offenses.

e.      Substantial Experience in the Practice of Law. The Kansas Supreme Court admitted the respondent to practice law in the State of Kansas in 1983. At the time of the misconduct, the respondent has been practicing law for nearly 30 years.

f.      Indifference to Making Restitution. While the respondent has malpractice insurance and while the respondent has turned over this matter to the carrier, at this time the Foundation remains financially injured by the respondent's misconduct. At the hearing on this matter, the respondent did not

7

express any concern about the fact that the Foundation has not yet been made whole or what he will do if his carrier does not make the Foundation whole.

"28.     Mitigating circumstances are any considerations or factors that may justify a reduction in the degree of discipline to be imposed. In reaching its recommendation for discipline, the hearing panel, in this case, found the following mitigating circumstances present:

a.     Personal or Emotional Problems if Such Misfortunes Have Contributed to Violation of the Kansas Rules of Professional Conduct. The respondent suffers from anxiety, depression, and concomitant narcissism. It is clear that the respondent's mental health struggles contributed to his misconduct. The respondent has worked hard on his issues, as detailed by his psychologist, Dr. Karen L. Higginbotham during her testimony and documented in her treatment summaries provided.

b.     The Present and Past Attitude of the Attorney as Shown by His or Her Cooperation During the Hearing and His or Her Full and Free Acknowledgment of the Transgressions. The respondent fully cooperated with the disciplinary process. Additionally, the respondent admitted the facts and the rule violations.

c.     Previous Good Character and Reputation in the Community Including Any Letters from Clients, Friends and Lawyers in Support of the Character and General Reputation of the Attorney. The respondent was an active and productive member of the bar of Goodland, Kansas. The respondent enjoys the respect of his peers and generally possesses a good character and reputation as evidenced by several letters received by the hearing panel.

d.     Remorse. At the hearing on this matter, the respondent expressed genuine remorse for having engaged in the misconduct.

8

"29.    In addition to the above-cited factors, the hearing panel has thoroughly examined and considered the following Standards:

'4.41    Disbarment is generally appropriate when:

. . . .

(b)    a lawyer knowingly fails to perform services for a client and causes serious or potentially serious injury to a client; or

(c)    a lawyer engages in a pattern of neglect with respect to client matters and causes serious or potentially serious injury to a client.

'4.42    Suspension is generally appropriate when:

(a)    a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b)    a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

'4.62    Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

'5.11    Disbarment is generally appropriate when:

. . . .

    (b)    a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that serious[ly] adversely reflects on the lawyer's fitness to practice.

'8.1    Disbarment is generally appropriate when a lawyer:

. . . .

    (b)    has been suspended for the same or similar misconduct, and intentionally or knowingly engages in further acts of misconduct that cause injury or potential injury to a client, the public, the legal system, or the profession.'

"*Recommendation*

"30.    During closing arguments, the disciplinary administrator indicated that had he known about the misconduct in this case at the time of the previous case, he would have recommended an indefinite suspension at that time. As a result, the disciplinary administrator recommended that the respondent's license be indefinitely suspended and that the effective date of the indefinite suspension be made retroactive to December 23, 2016, the date of the six month suspension previously entered by the Court. The disciplinary administrator also argued that if the hearing panel was inclined to recommend a shorter suspension, the disciplinary administrator recommended that regardless, a reinstatement hearing, under Rule 219 be recommended to ensure that the respondent is fit to practice at the time of his reinstatement.

"31.    The respondent recommended that he be censured, that the censure be published in the Kansas Reports, and that the respondent be placed on probation under the terms and conditions in his proposed probation plan. Alternatively, the respondent recommended that his license be suspended for a period of time, but that the imposition of the suspension be suspended [and] that he be placed on probation under the terms and conditions of his proposed probation plan. Additionally, the respondent indicated a

10

willingness to remain on probation for a period longer than three years. Finally, the respondent indicated that he will not file a petition seeking reinstatement to the practice of law from the previous suspension until after the Court issues its opinion in this case.

"32.     When a respondent makes a request to be placed on probation, the hearing panel is obligated to consider Rule 211(g) to determine whether consideration of probation is appropriate.

'(3)     The Hearing Panel shall not recommend that the Respondent be placed on probation unless:

(i)      the Respondent develops a workable, substantial, and detailed plan of probation and provides a copy of the proposed plan of probation to the Disciplinary Administrator and each member of the Hearing Panel at least fourteen days prior to the hearing on the Formal Complaint;

(ii)     the Respondent puts the proposed plan of probation into effect prior to the hearing on the Formal Complaint by complying with each of the terms and conditions of the probation plan;

(iii)    the misconduct can be corrected by probation; and

(iv)     placing the Respondent on probation is in the best interests of the legal profession and the citizens of the State of Kansas.'

"33.     The hearing panel concludes that the respondent developed a workable, substantial, and detailed plan of probation. The respondent provided a copy of the proposed plan of probation to the disciplinary administrator and each member of the hearing panel approximately a month before the hearing on the formal complaint. The

11

respondent put [all of] the elements of the proposed plan of probation into effect that he could prior to the hearing, given that his license to practice law is currently suspended. However, the misconduct cannot be corrected by probation. See *In re Stockwell*, 296 Kan. 860, 868, 295 P.3d 572 (2013) ('Moreover, this court is generally reluctant to grant probation where the misconduct involves fraud or dishonesty because supervision, even the most diligent, often cannot effectively guard against dishonest acts.') Additionally, placing the respondent on probation is not in the best interests of the legal profession and the citizens of the State of Kansas. Accordingly, the hearing panel concludes that probation is not appropriate in this case at this time.

"34.     The respondent's misconduct in this case and in the 2016 disciplinary case is serious misconduct. The respondent repeatedly engaged in dishonest conduct. In the 2016 disciplinary case, when the respondent could not accomplish his client's goals, the respondent fabricated pleadings to deceive his client. In this case, the respondent's inaction cost his client at least $45,[5]00 and the respondent compounded his misconduct by providing false information to his client.

"35.     Particularly concerning to the hearing panel is the fact that the respondent knew that he had engaged in the conduct at issue in this case at the time of the earlier hearing, but affirmatively stated during that hearing that there were no additional issues in his practice. Before the respondent is permitted to resume the practice of law, the hearing panel must have confidence that the respondent's misconduct will not recur. At this time, the hearing panel does not have confidence that there are no other issues or that the respondent will not repeat the misconduct.

"36.     Accordingly, based on the findings of fact, conclusions of law, and the Standards listed above, the hearing panel unanimously recommends that the respondent's license to practice law be indefinitely suspended. The hearing panel further recommends that the effective date of the indefinite suspension be made retroactive to December 23, 2016, the date of the Court's previous suspension order. The hearing panel recommends that the indefinite suspension be made retroactive provided the respondent does not file a motion for reinstatement from his earlier suspension prior to the Court taking action in this case.

12

"37.    At the reinstatement hearing, the hearing panel recommends that the respondent put forth a plan of practice supervision to include safeguards to hold the respondent accountable and to prevent the recurrence of the misconduct in this case. In addition to supervision, the plan should also include participation in KALAP through an extended monitoring agreement and continued treatment, should the treatment provider determine that ongoing treatment would be beneficial to the respondent.

"38.    Costs are assessed against the respondent in an amount to be certified by the Office of the Disciplinary Administrator."

DISCUSSION

In a disciplinary proceeding, this court considers the evidence, the panel's findings, and the parties' arguments and determines whether KRPC violations exist and, if they do, what discipline should be imposed. Attorney misconduct must be established by clear and convincing evidence. *In re Foster*, 292 Kan. 940, 945, 258 P.3d 375 (2011); see also Supreme Court Rule 211(f) (2018 Kan. S. Ct. R. 251) (a misconduct finding must be established by clear and convincing evidence). "Clear and convincing evidence is 'evidence that causes the factfinder to believe that "the truth of the facts asserted is highly probable."'" *In re Lober*, 288 Kan. 498, 505, 204 P.3d 610 (2009) (quoting *In re Dennis*, 286 Kan. 708, 725, 188 P.3d 1 [2008]).

Respondent filed no exceptions to the final hearing report. As such, the panel's factual findings are deemed admitted. Supreme Court Rule 212(c), (d) (2018 Kan. S. Ct. R. 255).

The evidence before the hearing panel establishes by clear and convincing evidence the charged conduct violated KRPC 1.3 (diligence); KRPC 1.4(a) (client

13

communication); and KRPC 8.4(c) (conduct involving dishonesty, fraud, deceit, or misrepresentation). We adopt the panel's findings and conclusions.

The only remaining issue is determining the appropriate discipline for respondent's violations. At the panel hearing, the Disciplinary Administrator's office recommended the respondent's license be indefinitely suspended with an effective date made retroactive to December 23, 2016, and a reinstatement hearing if respondent applied for reinstatement. The hearing panel unanimously agreed with the recommendation.

The hearing panel's recommendations are advisory only and do not prevent us from imposing greater or lesser sanctions. Supreme Court Rule 212(f); *In re Kline*, 298 Kan. 96, 212-13, 311 P.3d 321 (2013).

After careful consideration, the court holds the respondent should be indefinitely suspended effective as of the date of this order and that he be subject to a reinstatement hearing under Supreme Court Rule 219 (2018 Kan. S. Ct. R. 264) before his suspension may be lifted. At the reinstatement hearing, respondent must provide to the hearing panel and the Disciplinary Administrator's office a written report from a licensed psychiatric, psychological, or social work professional approved by the Kansas Lawyers Assistance Program that includes an opinion that there are no current impediments to respondent's ability to practice law. Further, respondent must provide to the hearing panel a plan under which his law practice after reinstatement will be supervised, for a period of time to be set by this court, by an attorney acceptable to the Disciplinary Administrator's office, and containing provisions designed to prevent recurrence of the problems that led to the indefinite suspension.

In ordering this effective date, contrary to the recommended effective date, the court considered the serious nature of the violations detailed in the panel's report; the

violations' similarity to the misconduct in the previous disciplinary case; and the respondent's affirmative statement at his earlier hearing before this court that there were no additional problems in his practice, even though he knew then he had engaged in the misconduct at issue in this case.

The court acknowledges the strides respondent has achieved in his rehabilitation and the considerable contributions by respondent's fellow attorneys, family, and community members assisting with those successes.

CONCLUSION AND DISCIPLINE

IT IS THEREFORE ORDERED that Jeffery A. Mason be and he is hereby disciplined by indefinite suspension, effective on the filing of this opinion, in accordance with Supreme Court Rule 203(a)(2) (2018 Kan. S. Ct. R. 234).

IT IS FURTHER ORDERED that respondent comply with Supreme Court Rule 218 (2018 Kan. S. Ct. R. 262) and Rule 219. At the reinstatement hearing, respondent must provide to the hearing panel and the Disciplinary Administrator's office a written report from a licensed psychiatric, psychological, or social work professional approved by the Kansas Lawyers Assistance Program that includes an opinion that there are no current impediments to respondent's ability to practice law. Further, respondent must provide to the hearing panel a plan under which his law practice after reinstatement will be supervised, for a period of time to be set by this court, by an attorney acceptable to the Disciplinary Administrator's office, and containing provisions designed to prevent recurrence of the problems that led to the indefinite suspension.

IT IS FURTHER ORDERED that the costs of these proceedings be assessed to respondent and that this opinion be published in the official Kansas Reports.

15

NUSS, C.J., and LUCKERT, J., not participating.

THOMAS KELLY RYAN and OLIVER KENT LYNCH, District Judges, assigned.[1]

---

[1]**REPORTER'S NOTE:** District Judge Ryan and District Judge Lynch were appointed to hear case No. 119,012 vice Chief Justice Nuss and Justice Luckert respectively under the authority vested in the Supreme Court by art. 3, § 6(f) of the Kansas Constitution.